# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LOUIS LAMON, | 1:09-cv-02220-OWW-SMS (PC) |
| Plaintiff, | ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE |
| v. | |
| CATE, et al., | |
| Defendants. | (Doc. 1) |
| / | RESPONSE DUE WITHIN THIRTY DAYS |

**I.     SCREENING ORDER**

Plaintiff, Barry Louis Lamon ("Plaintiff"), is a state prisoner who is currently proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his Complaint on December 22, 2009. (Doc. 1.)

**A.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or

1  appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. §
2  1915(e)(2)(B)(ii).

3        **B.**    **Summary of Plaintiff's Complaint**

4        Plaintiff complains of acts that occurred while he was an inmate at Corcoran State Prison
5  ("COR") in Corcoran, California.  Plaintiff names forty-six Defendants and attempts to state six
6  causes of action based on allegations that he was subjected to tainted meals and placement with
7  violent cell-mates so as to subject him to conspiracies; cruel and unusual punishment via his
8  living conditions; retaliation; failure of protection; and violation of various sections of the
9  California Code of Regulations.

10       Plaintiff alleges that there is a "Shadow-Policy" in place at CSP whereby an inmate who
11 has assaulted a prison employee, is a "Jailhouse Lawyer," or has a repulsive and socially
12 offensive arrest history (rape, child murder, or child-molestation) are targeted for retaliation by
13 COR officials.  (Doc. 1, Compl., 11:14-22.)  Plaintiff alleges that he was subjected to retaliation
14 for over a year via being denied mail from his family, friends, attorneys and legal-aid groups, via
15 his meals which were tainted with pain causing agents and served in smaller quantities so as to
16 cause he, and via cell-mates (who were "inmate-agents" enlisted to inflict pain and physical
17 discomfort on Plaintiff) to fight over the food tray with larger portions -- both because he
18 assaulted a prison employee and his prolific legal filings.  (*Id.*, at pp.12-13.)  Plaintiff also
19 alleges that the "inmate-agents" were enlisted to spy on him to be able to dispute/discredit the
20 allegations in and to quash Plaintiff's inmate appeals.  (*Id.*, at p. 14.)  Plaintiff seeks monetary
21 damages.

22       Plaintiff has stated some cognizable claims and may be able to correct deficiencies in his
23 pleading so as to state additional cognizable claims.  Thus, he is being given the applicable
24 standards based on his stated claims and leave to file a first amended complaint.  Plaintiff any
25 either choose to proceed on only the claims found cognizable herein, or may file a first amended
26 complaint.  If he chooses to file a first amended complaint, he should closely follow the
27 pleading requirements set forth below and may not exceed twenty-five pages in length.
28 ///

**C.    Pleading Requirements**

**1. Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) *quoting Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 555. While factual allegations are accepted as true, legal conclusion are not. *Iqbal.* at 1949; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 556-557. "[P]laintiffs [now] face a higher burden of pleadings facts . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), and while a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart*

3

*Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If he chooses to file a first amended complaint, Plaintiff should endeavor to make it as concise as possible. He should merely state which of his constitutional rights he feels were violated by each Defendant and its factual basis.

### 2. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff names but fails to link CCII G. Rangel, Staff Psychologist Lane, Litigation Coordinator Kimbrell, and CCI F. Gutierrez to any of his factual allegations. Further, identifiers such as "Defendants, and each one of them" are insufficient to link any named defendant to factual allegations. Plaintiff must clarify which Defendant(s) he feels are responsible for each violation of his constitutional rights and their factual basis as his Complaint must put each Defendant on notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

### 3. Federal Rule of Civil Procedure 18(a)

Fed.R.Civ.P. 18(a) states that "A party asserting a claim to relief as an original claim,

counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

The fact that claims are premised on the same type of constitutional violation(s) (i.e. retaliation) against multiple defendants does not make them factually related. Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event. Plaintiff is advised that if he chooses to file a first amended complaint, and fails to comply with Rule 18(a), all unrelated claims will be stricken.

**4. Exhibits**

Plaintiff's Complaint is comprised of approximately twenty-two pages of factual allegations followed by twenty-five pages of exhibits.

The Court is not a repository for the parties' evidence. Originals, or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) need not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the Court). If Plaintiff attaches exhibits to his amended complaint, each exhibit must be specifically referenced. Fed. R. Civ. Pro. 10(c). For example, Plaintiff must state "see Exhibit A" or something similar in order to direct the Court to the specific exhibit Plaintiff is referencing. Further, if the exhibit consists of more than one page, Plaintiff must reference the specific page of the exhibit (i.e. "See Exhibit A, page 3").

At this point, the submission of evidence is premature as Plaintiff is only required to state a prima facie claim for relief. Plaintiff is reminded that, for screening purposes, the Court must assume that Plaintiff's factual allegations are true. It is unnecessary for a plaintiff to

submit exhibits in support of the allegations in a complaint. Thus, if Plaintiff chooses to file a first amended complaint, he would do well to simply state the facts upon which he alleges a Defendant has violated his constitutional rights and refrain from submitting exhibits.

### D. Plaintiff's First Cause of Action[1]

#### 1. Conspiracy

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (*quoting United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (*citation omitted*)), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (*quoting Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 441 *quoting United Steel Workers*, 865 F.2d at 1541.

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (*citations omitted*). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Id.* at 1964-65 (internal quotations and citations omitted). As such, Plaintiff's bare allegation that "Defendants, and each of them" conspired to subject Plaintiff to the "unconstitutional shadow-policy" does not suffice to give rise to a conspiracy claim under section 1983.

---

[1] Plaintiff utilizes the nomenclature from criminal proceedings (i.e. Count One, Count Two, etc.). However, since this is a civil action each of his various theories of liability are most properly categorized as causes of action and are referred to as such herein.

### 2. Cruel & Unusual Punishment/Living Conditions

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Id*. (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. *E.g., Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff's allegations under his first cause of action repeatedly refer to "Defendants, and each of them," which, as previously discussed, is not specific enough to link any of the named defendants to Plaintiff's allegations. The only individual defendants that Plaintiff adequately links to his claims under his first cause of action are Defendants Jennings, DaVeiga, Finley, Baer, Carter, and Miles – whom Plaintiff alleges assigned him, or had knowledge that he was deliberately being assigned to specific cells in buildings where defendants to his civil suits were employed so that his writings could be censored; his meals could be tainted with pain inflicting agents; he could be celled with "agent-inmates" enlisted to help inflict pain and physical discomfort on him; and he would be denied mail from his family, friends, attorneys, and legal-aid groups. These allegations are sufficient to state cognizable claims against Defendants Jennings, DaVeiga, Finley, Baer, Carter, and Miles for violations of Plaintiff's rights under the Eighth Amendment.

### E.    Plaintiff's Second Cause of Action

#### 1. Retaliation

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) An

7

assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). The conduct identified by Plaintiff as retaliatory must have been motivated *by* his engagement in a protected activity, and the conduct must *not* have reasonably advanced a legitimate penological goal. *Brodheim*, 584 F.3d at 1271-72 (citations omitted). It bears repeating that while Plaintiff need only allege facts sufficient to support a plausible claim for relief, the mere possibility of misconduct is not sufficient, *Iqbal*, 129 S.Ct. at 1949-50, and the Court is "not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Plaintiff alleges that, because of his past filings of civil suits and prison grievances,[2] Defendants Adams, Jennings, DaVeiga, Finley, Baer, Carter, Miles, and Stzukowski assigned Plaintiff to housing in buildings operated or supervised by defendants in his civil suits and suppressed meaningful investigation into his allegations that various of the named Defendants[3] retaliated[4] against him for filing complaints, inmate grievances, and civil suits. (Doc. 1, Compl., pp. 13-14.) These conclusory allegations seek indulgence in unwarranted inferences and are not cognizable as they are not specific enough to show that Defendants Adams, Jennings, DaVeiga, Finley, Baer, Carter, Miles, and Stzukowski were involved in the day to day decisions as to Plaintiff's housing placement and the handling/processing of his inmate grievances and that any such actions were specifically motivated by an animus towards Plaintiff for his protected

---

[2] Against Adams, Jennings, McGuinness, Thompson, Folks, Brightwell, Cano, Nelson, Jones, Baer, Wilber, and David.

[3] Specifically, Thompson, Folks, Brightwell, Tait, Womack, Zavala, Wild, Wilber, T.L. Williams, Garza, Renteria, C. Guttierrez, Hieng, Oaks, Haywood, David, L. Melo, G. Harper, Williams, Alcantar, Hernandez, Olivis, D. Castillo, and Bardonnex.

[4] Plaintiff's allegations that the Defendants named in footnote 2 (of routinely and systematically serving him reduced portion meals that were tainted with chemicals to cause him chronic and excruciating pain, and by placing him with cell mates who were inmate-agents enlisted by these defendants to monitor Plaintiff's civil suit preparations and to aid and assist the defendants in tainting his meals and to discredit Plaintiff's allegations of retaliatory abuses to quash Plaintiff's inmate grievances) are subsequently, separately discussed.

activities.

Plaintiff also alleges that even though he withdrew from the Corcoran Jewish Kosher Meal Program (JKMP) in November of 2008, Defendants Thompson, Folks, and Brightwell continued issuing him JKMP meals that were outdated, spoiled, stale, and tainted with pain and discomfort causing agents in retaliation for his prolific filing of grievances and civil suits. (*Id*., at ¶ 61.) In February of 2009, Plaintiff received a screening order from the District Court in one of his civil suits against Corcoran staff (including Defendants Adams, Thompson, Folks, and Brightwell) and three days later Defendants Thompson, Folks, and Brightwell suddenly began issuing him reduced portion, inferior quality, and tainted meals again and Defendants Jennings, DaVeiga, Finley, Baer, Tait, Womack, Zavala, Wild, Wilber, T.L. Williams, Garza, Renteria, C. Guttierrez, Hieng, Oaks, and Haywood forced Plaintiff to accept the "visually-corrupted meals." (*Id.*, at ¶ 62.) The mere coincidence of proximity between Plaintiff's receipt of a screening order and his being served lesser meals is not cognizable as it merely suggests the possibility of misconduct and does not rise to the level of showing that the acts by these defendants were actually motivated by Plaintiff's engagement in protected activities. *See Brodheim*, 584 F.3d at 1271-72; *Iqbal*, 129 S.Ct. at 1949-50.

Plaintiff further alleges that on April 3, 2009, Defendants Guttierrez, Renteria, Oaks, and Haywood ordered Plaintiff to accept IM Jackson as a cell-mate, or be subjected to progressive disciplinary action. (*Id.*, at ¶ 63.) After Plaintiff accepted IM Jackson as a cell-mate, Defendants Guttierrez, Renteria, Oaks, Haywood, Tait, Zavala, Womack, Wilber, Wild, Hieng, and T.L. Williams drove Plaintiff and IM Jackson to fight each other by repeatedly serving them one regular meal and one meal which was significantly smaller and saturated in pain and discomfort causing chemicals. (*Id.*) When Plaintiff and his cell-mate complained about the meals, these Defendants uniformly informed them that "There's a real man and there's a whining and complaining little bitch in this cell. We're feeding the man like a man, and the bitch like a bitch, now you two work out which one of you is the bitch." (*Id.*) Giving Plaintiff the leniencies accorded to a pro se plaintiff, the allegations and implications that his filing of inmate grievances and civil suits equate to the whining which is being punished by smaller,

9

1  tainted meals states a cognizable retaliation claim against Defendants Guttierrez, Renteria,
2  Oaks, Haywood, Tait, Zavala, Womack, Wilber, Wild, Hieng, and T.L. Williams.

3  Plaintiff alleges that on April 10, 2009, he and IM Jackson had a brutal fight and
4  reported that they could no longer share a cell because IM Jackson admitted to Plaintiff that he
5  had been enlisted to help "the said defendants, and each of them" retaliate against Plaintiff and
6  to discredit Plaintiff's allegations of retaliation and abuse. (*Id.*, at ¶ 64.) After the fight,
7  Defendant Balbina gave Plaintiff a medical examination and falsely reported that Plaintiff had
8  no injuries (despite Plaintiff presenting with "clearly-apparent, torn, bloody, and swollen skin,
9  and multitudinous other visible injuries") and that Defendant Balbina and Defendant Savermilch
10 reported that Defendant Savermilch performed the post-fight examination when it was
11 performed by Defendant Balbina. (*Id.*) Plaintiff further alleges that Defendants Balbina and
12 Savermilch deliberately endangered Plaintiff by helping "Defendants and each of them" to
13 falsely report that Plaintiff suffered no injuries and was the aggressor who attacked IM Jackson
14 while he slept. (*Id.*, at ¶ 65.) These conclusory allegations do not state cognizable retaliation
15 claims against Defendants Balbina and Savermilch and they do not show that Defendants
16 Balbina and Savermilch.had any knowledge of Plaintiff's protected activities.

17 Under his retaliation cause of action, Plaintiff alleges that he wrote several letters
18 informing Defendants Cate and Adams of the "endangerment-scheme" and of Defendants Cano,
19 Nelson, and Jones blocking him from utilizing the inmate grievance process,[5] but that
20 Defendants Cate and Adams failed to take any action to better train, supervise, or discipline
21 Defendants Cano, Nelson, and Jones such that Plaintiff was denied meaningful review of his
22 inmate grievances. (*Id.*, at ¶ 66.) While it is true that a plaintiff is entitled to an inference at the
23 summary judgment stage (and therefore also at the pleading stage) that prison administrators are
24 liable for deliberate indifference to serious medical needs when they knowingly fail to respond
25 to an inmate's requests (i.e. letters) for help, *see Jett v. Penner,* 439 F.3d 1091, 1098 (9th Cir.

---

[5] Plaintiff alleges that on more than ten (10) occasions, he attempted to file inmate grievances over his being celled with an "Inmate-agent" by giving grievances to Defendants Cano, Nelson, and Jones who consistently "trashed" and/or caused his grievances to disappear. (Doc. 1, Compl., ¶ 66.) Plaintiff's claims regarding the processing and/or handling of his inmate appeals is discussed subsequently herein.

10

2006) *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir.2005); *Moore v. Jackson*, 123 F.3d 1082, 1087 (8th Cir. 1997), Plaintiff's allegations do not amount to a cognizable claim for unconstitutional retaliation against Defendants Cate and Adams as Plaintiff fails to show that his letters to Defendants Cate and Adams sufficiently advised them that Defendants Cano, Nelson, and Jones were acting, and/or failing to act, as a result of Plaintiff's prolific filings of inmate grievances and/or civil suits.  Nor does Plaintiff show that any action, and/or failure to act, by Defendants Cate and Adams was as a result of their awareness of Plaintiff's protected activities.

Plaintiff alleges that the morning of June 2, 2009, he received a twenty-seven years to life sentence for battery on a correctional officer. (Doc. 1, Compl., ¶ 67.) That same day, Defendants Womack, Alcantar, Hernandez, and Miles ordered Plaintiff to accept IM Mays as a cell-mate. (*Id.*) Upon IM Mays sharing the cell with Plaintiff, Defendants Williams, Melo, David, Alcantar, Hernandez, Castillo, and Harper began issuing Plaintiff and IM Mays one regular meal and one meal that was significantly smaller and tainted. (*Id.*) Plaintiff disclosed to IM Mays what had happened when he was celled with IM Jackson. (*Id.*) IM Mays disclosed that Defendants Womack, Alcantar, Hernandez, Castillo, David, Melo, Harper, and Williams had trained him how to avoid the most tainted meal items, but had not told IM Mays that Plaintiff had already had a fight with IM Jackson and had received a third life sentence for battery on a correctional officer. (*Id.*) IM Mays further disclosed that he was in the secured housing unit for battery on a correctional officer as well. (*Id.*) Plaintiff and IM Mays believed they were being set up for trouble and so refused to be housed together; whereupon Defendant David moved IM Mays. (*Id.*) Subsequently, Defendants Womack, Alcantar, Hernandez, Castillo, David, Melo, Harper, Williams, and Miles began providing IM Mays with extra food and magazines such that IM Mays now denies that they were ever served corrupted food. (*Id.*) These allegations fail to state a cognizable retaliation claim against Defendants Womack, Alcantar, Hernandez, Castillo, David, Melo, Harper, Williams, and Miles as it fails to show that

any of their actions were motivated because Plaintiff engaged in protected activities.[6]

Also under his cause of action for retaliation, Plaintiff alleges that Defendants I. Vela-Lopez and J. Guzman of the law library made extra copies of his legal papers and circulated them among the defendants named therein knowing that those persons would retaliate against Plaintiff. (*Id.*, at ¶ 68.) Subsequently, the persons mentioned in Plaintiff's legal papers would rotate through his housing unit and the tampering with his meals would be greatly amplified during their shift(s). (*Id.*) These allegations state a cognizable retaliation claim against Defendants I. Vela-Lopez and J. Guzman.

### F. Plaintiff's Third Cause of Action

#### 1. Failure to Protect

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*citing Helling v. McKinney*, 509 U.S. 25, 31 (1993)). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer*, 511 U.S. at 833; *Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." *Farmer*, at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health ... .'" *Farmer*, 511 U.S. at 843 (*citing Helling v. McKinney*, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Farmer*, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware."

---

[6] It appears that Plaintiff errantly believes that actions by correctional officers motivated by Plaintiff's battery of a correctional officer and/or conviction history equates to an unconstitutional retaliation. (Doc. 1, Compl., ¶¶ 52, 67.) While retaliation for any precipitating event may be unsavory, neither of these instances equates to activities constitutionally protected against retaliation. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

12

*Id.* at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Id.* at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Under this cause of action, Plaintiff alleges that "Defendants Jennings, DaVeiga, Finley, Baer, Carter, Miles, Cano, Nelson, Jones, Adams, Tait, Womack, Zavala, Wild, Wilber, T.L. Williams, Garza, Renteria, C. Guttierrez, Hieng, Oaks, Haywood, David, L. Melo, G. Harper, Williams (#2), Alcantar, Hernandez, Olivis, Castillo, Bardonnex, and each of them knew beforehand, that [he] was being continuously-subjected to a campaign of sadistic meal-tampering and that [he] was purposely being celled with Jackson and Mays for the express purpose of promoting physical and mental harm on [him] in retaliation for [his] grievances, and civil lawsuits, despite having foreknowledge of [his] endangerment, Defendants, and each of them, wantonly and sadistically failed to intervene and stop [his] subjection to the aforesaid sadistic scheme. The acts and/or omissions of said defendants were premeditated and sadistic, done under color of state law, and devoid of any legitimate penological goal." (Doc. 1, Compl. ¶ 72.) These allegations do not state a cognizable claim as they are too conclusory and general to show that any of the named Defendants personally knew of and were deliberately indifferent to Plaintiff's circumstances. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

G. **Plaintiff's Fourth, Fifth, and Sixth Causes of Action**

In his Fourth, Fifth, and Sixth Causes of Action, Plaintiff alleges violations of sections 3141, 3050(l), and 3160(a) of Title 15 of the California Code of Regulations. The existence of regulations such as these governing the conduct of prison employees does not necessarily entitle Plaintiff to sue civilly to enforce the regulations or to sue for damages based on the violation of the regulations. The Court has found no authority to support a finding that there is an implied private right of action under Title 15 and Plaintiff has provided none. Given that the statutory language does not support an inference that there is a private right of action, the Court finds that

13

Plaintiff fails and is unable to state any claims upon which relief may be granted based on the violation of Title 15 regulations.

### H. Inmate Appeals

Plaintiff appears to grieve the processing, handling, and reviewing of his 602 inmate appeals by various of the Defendants, including, but not limited to Appeals Coordinators T. Cano, J. Jones, L. Nelson, J. Guzman, and Kimbrell.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez v. DeRobertis*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. *Buckley*, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the

14

violation." *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005) *accord George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails, and is unable to state a cognizable claim against any of the named Defendants, including, but not limited to Appeals Coordinators T. Cano, J. Jones, L. Nelson, J. Guzman, and Kimbrell for the processing and/or reviewing of his 602 inmate appeals.

To the extent that Plaintiff included the allegations regarding the handling of his inmate appeals in an attempt to show exhaustion of his administrative remedies, he is advised that failure to exhaust is an affirmative defense, to be raised by a defendant. *Jones v. Bock*, 549 U.S. 199 (2007). It appears to the Court that, aside from attempting to state a claim for the handling of his inmate appeals – which is not cognizable, Plaintiff might have included his allegations regarding the handling of his inmate grievances to show that his efforts to exhaust administrative remedies were thwarted in anticipation of a defense. However, a complaint is not the proper vehicle for such arguments, but rather must merely state allegations to show that a plaintiff exhausted his available administrative remedies on the claims set forth therein. Arguments pertaining to the availability (or unavailability) of administrative remedies are most properly vetted when the exhaustion defense is raised via a motion to dismiss. Fed. R. Civ. Pro. 12(b).

### I.      Supervisory Liability

It appears that Plaintiff named CDCR Secretary Matthew Cate, CSP Warden D.G. Adams, Associate Warden M. Jennings, Captain K DaViega, Lieutenant G.A. Finley, Sergeant A. Baer, Sergeant T. Carter, Sergeant Miles, Appeals Coordinator T. Cano, Food Manager C.D. Thompson, Associate Food Manager S. Folks, Correctional Supervising Cook J. Brightwell, Sergeant S. Tzukowski, and Chief Medical Officer W.J.M. McGuinness as defendants in this suit at least in part because they hold supervisory positions.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds

a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Iqbal,* 129 S.Ct. at 1949. "In a §1983 suit or a Bivens action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.*

"'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." *Moss*, 2009 WL 2052985, *5 (*quoting Iqbal*, 126 S.Ct. at 1951 (*quoting Twombly*, 550 U.S. at 555)). "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.*

Thus, Plaintiff's allegation that Defendants CDCR Secretary Matthew Cate, CSP Warden D.G. Adams, Associate Warden M. Jennings, Captain K DaViega, Lieutenant G.A. Finley, Sergeant A. Baer, Sergeant T. Carter, Sergeant Miles, Appeals Coordinator T. Cano, Food Manager C.D. Thompson, Associate Food Manager S. Folks, Correctional Supervising Cook J. Brightwell, Sergeant S. Tzukowski, and Chief Medical Officer W.J.M. McGuinness are somehow liable for the acts of their subordinates does not rise to the level of cognizable claims.

**II.   CONCLUSION**

For the reasons set forth above, Plaintiff's Complaint is dismissed, with leave to file a

first amended complaint within thirty days. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in any first amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). The first amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's first amended complaint should be brief. Fed. R. Civ. P. 8(a). Such a short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 555 (2007) *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that a first amended complaint supercedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King,* 814 F.2d at 567 (*citing London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)); *accord Forsyth*, 114 F.3d at 1474.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File a first amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file a first amended complaint and wishes to proceed only on the claims identified by the Court as viable/cognizable in this order; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

**Dated:** **February 25, 2011**          /s/ Sandra M. Snyder
                                          UNITED STATES MAGISTRATE JUDGE